No. 3103

Second Circuit

HAMILTON v. ROCKEFELLER ET AL.

(November 18, 1929. Opinion and Decree.)

Murff and Perkins, of Shreveport, attorneys for plaintiff, appellant.

Blanchard, Goldstein & Walker, of Shreveport, attorneys for Dr. Eichelberger.

Cook & Cook, of Shreveport, attorneys for defendant, appellee.

ODOM, J. The plaintiff, a lady about six- ty-five years old, owned a piano which her father gave her when she was a child and which, for that reason, she prized very highly as an heirloom. The case, as well as the decoration and legs, were made of rosewood. As a musical instrument, it had lost its usefulness, due to age and wear, but she wanted to preserve it as nearly as she could and decided to have the material converted into a table. To that end, plaintiff turned the piano over to defendant, who is a skilled cabinet maker. The defendant made the table, delivered it to plaintiff, and, for his services, she paid him the agreed price of $160. At first, she did not examine the table carefully due to the fact that her niece was soon to be married, and wedding presents which were then being sent in were placed upon it. Later on, plaintiff and her two sisters examined the table and reached the conclusion that the material out of which it had been made was not the material which came from the piano, and naturally, plaintiff was dissatisfied. She brought this suit alleging that defendant had used the material from her piano in a table which he had built for Dr. Eichelberger; that both Rockefeller and Dr. Eichelberger were in bad faith—Rockefeller, for having knowingly used her material in the table for Dr. Eichelberger, and Dr. Eichelberger, for having accepted the table which he knew was made of her material. She seeks judgment decreeing her to be the owner of the top placed by Rockefeller on Dr. Eichelberger's table, and the moulding, corners, and all other material taken from the piano and not used in the table made for her, and ordering that defendant surrender such parts; and in the alternative, in case such parts should not be surrendered, that she have money judgment against them in solido for $75, as attorney's fees, and $300 for the value of such parts.

Rockefeller's defense is that he used the materials from plaintiff's piano in making her table; and Dr. Eichelberger defends on the ground that he employed Rockefeller to build a table for him, for which he paid $175, and that he has no knowledge as to where the material which Rockefeller used in his table was obtained.

The district court rendered judgment for plaintiff against Rockefeller and Dr. Eichelberger in solido for $20; and against Rockefeller, individually, for $5. From this judgment, plaintiff alone appeals.

## OPINION.

Plaintiff's suit is grounded upon the proposition that Rockefeller did not use the material from her piano in the construction of the table which he delivered to her, but that he knowingly used said material in making one for Dr. Eichelberger.

If she failed to make out her case on that point, her suit, of course, must fall.

Due to the fact that plaintiff feels so much aggrieved at what she no doubt sincerely believes to be a gross injustice done her by these defendants in robbing her of a family heirloom, a gift from her father, a relic of her childhood, we have given the testimony most careful scrutiny and our conclusion is that plaintiff's grievance is wholly fancied—not real. We are convinced that plaintiff has in the table delivered to her by Rockefeller the identical materials which came from her piano.

Plaintiff and her two sisters testified that it was not the same material, but they could give no satisfactory reason for that conclusion. The case of her piano was made of rosewood, and she, and every other witness called, testified that the table made and delivered to her is of rosewood. But plaintiff said: "The table top is not mine." When asked how she knew that, plaintiff said:

"Because it isn't material like my piano and it does not compare in color with it. You know when a table is varnished it shows light and dark streaks of wood and shows the grain of the wood and does not compare with my piano or the sides of my piano or the top of my piano,—it does not compare with it and does not compare with the piece that I have left of the top."

She and her sisters said also that they could see slight defects in the wood of which the table was made which did not show in the piano. A small piece of the top of the piano was sawed off and not used and was returned, and plaintiff says it does not "compare" with the top of the table.

All this is easily explained. The top of the piano which was used for the top of the table was highly polished on both sides; but, in order that the framing of the table might be glued to the top, it was necessary to remove some of the polish from the under side because glue will not hold to a highly polished surface. When the polish was removed, the grain of the wood and whatever defects there may have been therein, were exposed. The bottom of the table had a different appearance. Plaintiff and her witnesses say that the difference they detected was in the appearance of the under side. But the table top had been retouched or refinished. Rockefeller had applied a coat of shellac, all of which naturally gives the wood a somewhat different appearance. The small portion of the piano top which was returned was in the same condition as to finish that it was when removed, and it was partly by comparison that plaintiff reached the conclusion that it was of a different piece.

Mr. R. L. Barbee, a cabinet maker, whose experience has extended over a period of twenty or twenty-five years, examined the table and the piece sawed off. He said he "failed to find any place where the grain matched." However, he said, "that might have been due to the dyes used in the refinish of the other top, but I don't think so." Further testifying, he said:

"I base my opinion on that on the grain strictly. That is the only thing I can base it on. My opinion is that these grains do not match, though I would not swear whether it is the same top or not. There might have been a piece cut out between that end and the other piece, but at the same time it does not match now. I presume it is just like it was cut off. If both pieces of wood were naked or without any finish on it you could arrive at it perfectly; but one is a highly polished finish and the other is a dull finish."

This expert witness gave a very good reason why he could not "swear whether it is the same top or not."

Now Mr. Rockefeller swore positively and unequivocally that he used plaintiff's material in making her table. He was the only witness called who could be absolutely certain on that point. We see no reason to doubt either his veracity or his accuracy. He had no reason whatsoever to use other material in plaintiff's table. True, he made a table for Dr. Eichelberger, but he had other wood of the same kind with which to make it. It made no difference with him or with Dr. Eichelberger whether the Eichelberger table was made of plaintiff's rosewood piano top or a rosewood top from some other piano, and Rockefeller had several in his place at the time. The use of plaintiff's material in Dr. Eichelberger's table could not inure in the slightest to Rockefeller's benefit.

The district judge rendered judgment for plaintiff in a small amount, probably based on what he considered a fair value of the portions of material which Rockefeller considered worthless and destroyed. Defendant did not appeal. The judgment appealed from is affirmed; with costs in both courts.